UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                         :

ESTHER SOTO,                          :      11-CV-3187 (ARR) (LB)
                          :

            Plaintiff,           :      <u>NOT FOR ELECTRONIC</u>
                          :      <u>OR PRINT PUBLICATION</u>

     -against-               :
                          :      <u>OPINION AND ORDER</u>

GMRI, INC. d/b/a THE OLIVE GARDEN ITALIAN  :
RESTAURANT #1558,           :
                          :

           Defendants.         :
                          :
------------------------------------------------------------------- X

ROSS, United States District Judge:

      This case involves an incident in which plaintiff Esther Soto ("plaintiff" or "Soto") was

struck in the head by a coat rack, knocked over by another patron, while dining at an Olive

Garden restaurant operated by GMRI, Inc. ("defendant" or "GMRI").  Soto claims that defendant

was negligent in placing "a freestanding, unsecured coat rack, in between two (2) tables in close

proximity."  Pl. Esther Soto's Memo. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Soto Opp'n

Memo.") 4.  Defendant now moves (1) for summary judgment pursuant to Federal Rule of Civil

Procedure 56(b); and (2) to preclude the report and testimony of plaintiff's expert, Scott M.

Silberman, pursuant to Federal Rule of Evidence 702.  I hereby deny GMRI's motion for

summary judgment but grant defendant's motion to preclude Silberman's report and testimony.

## I.  BACKGROUND

      Taken in the light most favorable to plaintiff, <u>see</u> <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130,

134 (2d Cir. 1997), the relevant facts are as follows.

### A.      The Accident

      On January 9, 2011, Soto and her husband, Miguel Angel Soto Mercado ("Mercado")

were dining at the Olive Garden restaurant located at 505 Gateway Drive, Brooklyn New York. Pl.'s Aff. ¶ 2.  Soto and Mercado were seated at a corner booth, id. ¶ 3; Depo. of Esther Soto ("Soto Depo.") 32; Dkt. #47-19, Ex. T, at 2, known as "Table 306," Depo. of Gary Sealey ("Sealey Depo.") 37.  Plaintiff was seated on the outer edge of the booth, Soto Depo. 33; Dkt. #47-19, Ex. T, at 2, and Mercado was sitting across from her, Soto Depo. 33.

There was a table for two, known as "Table 307," Deposition of Fred Naclerio ("Naclerio Depo.") 53, directly to plaintiff's left, Pl.'s Aff. ¶ 3; Dkt. #47-19, Ex. T, at 2.  In addition, there was a coat rack standing between the table and the booth.  Miguel Angel Soto Mercado's Affidavit ("Mercado Affidavit") ¶ 7.  Because it was winter, there were "lots of coats" hanging on the coat rack.  Sealey Depo. 119; Mercado Depo. 38-39.  Soto testified that the distance between her and the coat rack was approximately the length of her outstretched arm plus two inches.  Soto Depo. 59-60.  When Soto and Mercado arrived, there were already two girls seated at Table 307.  Mercado Depo. 30.  While the girls were seated, the coat rack was approximately six inches from the chair of the girl closer to plaintiff.  Id. at 40.  At some point, the girls finished their meal and left.  Id. at 30.  The chair closer to plaintiff was thereafter pushed up against Table 307, Deposition of Kimberley Lewis ("Lewis Depo.") 74, such that it was approximately two to three feet from plaintiff's booth, id. at 80.

Subsequently, another pair of girls arrived at Table 307.  Mercado at 30-31.  While the girls were being seated, the accident occurred.  Id.; Lewis Depo. 75.  Soto suddenly "felt a heavy impact to the left side of [her] head and temple," Soto. Aff. ¶ 5, which was apparently caused by contact with the coat rack that had earlier been standing upright between Tables 306 and 307.  Although neither Soto nor Mercado saw the coat rack fall or strike plaintiff, Soto Depo 55-56;

Mercado Depo. 31,[1] one of the girls from Table 307 thereafter approached Mercado and apologized for knocking over the coat rack, id. at 32; Mercado Aff. ¶ 9.

**B.      Placement and Characteristics of the Coat Rack**

Gary Sealy ("Sealy"), who was a sales manager at the Olive Garden restaurant at the time of the incident, Sealy Depo. 10, testified that it was "common practice" to have the coat rack standing between Tables 306 and 307, id. at 74-75, and that the coat rack was "always in that spot" absent special circumstances, id. at 76.   Other restaurant staff members similarly testified that the coat rack's regular location was between Tables 306 and 307.  Lewis Depo. 52; Sealey Depo. 78-79; Naclerio Depo. 105; Depo. of Robert Rivera ("Rivera Depo") 28.   Fred Naclerio ("Naclerio"), who was the general manager of the restaurant, Naclerio Depo. 9, moreover testified that it was the restaurant's management team who had selected this location for the coat rack.   Id. at 51-53.   In addition, restaurant staff averred that the coat rack was freestanding on a flat surface, and that it was not secured or fastened in any way.   Lewis Depo. 47-48; Sealey Depo. 80-81; Naclerio Depo. 62-63; Rivera Depo. 17, 25.   None of the staff members who were deposed recalled any prior incident in which the coat rack had been knocked over or had hit anyone.   Lewis Depo. 99; Sealey Depo. 129; Naclerio Depo. 73-75.

At some point after the accident, plaintiff's counsel obtained an exemplar coat rack, which Soto and other witnesses have characterized as a fair and accurate representation of the culprit coat rack.  Soto Depo. 6; Mercado Depo. 48; Sealey Depo. 73.   According to plaintiff's expert, the characteristics and dimensions of the exemplar coat rack are as follows:

---

[1] Contradicting his deposition testimony, Mercado subsequently stated in his affidavit that he "saw a coat rack falling very quickly towards [his] wife" and observed "one of the pegs for the coat rack str[ike his] wife on the left side of her head."   Mercado Aff. ¶ 8.  "To the extent that [Mercado's] earlier deposition testimony is at odds with his [affidavit], [the court] follow[s] the rule that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'" Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997) (quoting Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).  I therefore disregard Mercado's affidavit as to whether he personally witnessed the accident.

(1) The subject coat rack was made of wood and was approximately 65 ~ inches high; (2) At the top of the rack there are six pegs that are used to hang coats; (3) There are four arms at the base of the coat rack for stability; (4) The base measures 18 ~ inches at its widest point; . . . (5) The long vertical post of the coat rack is comprised of 2.10" x 2.05" of timber materials; (6) The coat rack weighed 10.4 lbs . . . .

Dkt. # 17-18, at 3.

## II.  STANDARD OF REVIEW

The applicable standard of review here is the federal summary judgment standard, rather than the New York state standard.  See Doona v. OneSource Holdings, Inc., 680 F. Supp. 2d 394, 400-01 (E.D.N.Y. 2010).  Under the federal standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  McLee, 109 F.3d at 134 (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 255 (1986)).  Although the moving party carries the burden of proving that there is no genuine dispute respecting any material fact, the movant "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994).  Once this burden is met, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial."  LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998).

## III.  DISCUSSION

GMRI has moved for summary judgment on the basis that it neither created nor had awareness of a dangerous condition that foreseeably caused Soto's injuries.  Defendant also seeks to preclude the report and testimony of plaintiff's expert.

4

**A.    Factual Dispute as to Whether Placement of the Coat Rack between Tables 306 and 307 Was a Dangerous Condition that GMRI Created or of Which It Was Aware**

To establish a prima facie case of negligence against a property owner under New York law, a plaintiff must demonstrate the existence of a "dangerous condition that posed a foreseeable risk of injury to persons expected to be on the premises," Dina v. Olsen, 965 N.Y.S.2d 352, 352 (App. Div. 2013), and that "the defendant[] either created or had actual or constructive notice of that condition, " Crawford v. Pick Quick Foods, Inc., 750 N.Y.S.2d 884, 884 (App. Div. 2002); accord Taylor v. United States, 121 F.3d 86, 90-91 (2d Cir. 1997).

**1.    Placement of the coat rack as a "dangerous condition"**

There is a genuine factual dispute as to whether placement of the coat rack between plaintiff's booth and Table 307 was a "dangerous condition that posed a foreseeable risk," Dina, 965 N.Y.S.2d at 352, to Soto, who, as an Olive Garden customer, could certainly be "expected to be on the premises," id. A reasonable juror could conclude that it was foreseeable that the freestanding, unsecured coat rack—which weighed barely over ten pounds, stood on four legs that spanned a maximum base width of 1.5 feet, and was burdened with "lots of coats," Sealey Depo. 119—would tip over if someone bumped into it. A juror could likewise conclude that it was foreseeable that someone would, in fact, bump into the coat rack, causing it to fall into the booth where plaintiff was sitting.

The facts most favorable to plaintiff establish that there was a distance of only two to three feet between the booth and table. The coat rack, which reached over five feet tall, stood within that space. When the Table 307 chair closer to Soto was occupied, it was only six inches away from plaintiff. A finder of fact could determine that a customer could foreseeably move the chair further back either to get into or out of the chair, and that this backwards movement

5

could foreseeably cause contact between the customer's body and the coat rack, or between the chair and the coat rack.  Moreover, insofar as the coat rack stood over five feet tall, a reasonable juror could conclude that, if knocked over in plaintiff's direction, the coat rack could foreseeably traverse the length of plaintiff's outstretched arm plus two inches—that is, the distance separating the coat rack from where plaintiff was sitting in the booth.

Citing Mastellone v. City of N.Y., 813 N.Y.S.2d 669 (App. Div. 2006), defendant insists that "the coat rack was an open and obvious condition and was not inherently dangerous," id. at 669.  However, the facts of Mastellone are easily distinguishable.  In that case, the plaintiff was allegedly injured "when he tripped and fell over the legs of a coat rack in a passageway at the defendant's premises."  Id.  Insofar as that coat rack was a stationary object in plain sight, the plaintiff was fully capable of avoiding contact with the coat rack as he approached it. Accordingly, it was not foreseeable that someone exercising a reasonable degree of care would trip over the coat rack, and the coat rack's placement within the passage "was not inherently dangerous," id.

However, "[w]hether a dangerous condition exists on real property so as to create liability on the part of the landowner depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury." Fasano v. Green-Wood Cemetery, 799 N.Y.S.2d 827, 828 (App. Div. 2005).  Here, in contrast to Mastellone, it would be reasonable to conclude that a customer pulling the chair out from Table 307 would do so while facing the table.  In other words, a juror could infer that such a customer would have her back facing the coat rack.  Under these circumstances, the customer would not necessarily see the coat rack while moving the chair backward and could foreseeably bump into the coat rack with either her arm or the chair.  A reasonable juror could thus determine that placement of the unsecured coat rack between Tables

6

306 and 307 was an inherently dangerous condition.  Cf. Piazza v. Eckerd Corp., No. 002-CV-0043E(SC), 2003 WL 23350118 (W.D.N.Y. 2003) (concluding that a genuine issue of material fact existed as to defendant storeowners' negligence where there was evidence that plaintiff was struck by one or more lawn chairs that fell from a display on an upper shelf forty to forty-two inches high, that merchandise had been placed on the floor beneath, thereby subjecting customers to an increased risk of injury from falling merchandise, and that the lounge chairs had been secured on the shelf only by "flimsy" acrylic strips); Palmer v. Vitrano, 815 N.Y.S.2d 642, 643 (App. Div. 2006) (affirming denial of defendants' motion for summary judgment where "plaintiff was injured while exiting the defendants' convenience store when her leg came into contact with a display of firewood located immediately outside and to the right of the doorway," because "whether the placement of the subject display created a hazardous condition is an issue of fact for the jury"); Fasano, 799 N.Y.S.2d at 828 (holding that a triable issue existed as to whether "the condition upon which the plaintiff tripped and fell, a difference in elevation between the landing of a concrete staircase and the adjoining walkway, which ranged up to two inches, for a length of approximately two feet, was trivial"); Henderson v. Waldbaums, 539 N.Y.S.2d 795, 796-97 (App. Div. 1989) (concluding that "[i]t was within the jury's province to find that Waldbaums should have known that Dean's delivery practice created a strong likelihood of injury to customers" where plaintiff was struck by a Dean's shopping cart being used for delivery while standing at the meat counter in Waldbaums and where "the Waldbaums store was aware that Dean's regularly made its deliveries through the front door, using a shopping cart intended for customers"); Arena v. Ostrin, 520 N.Y.S.2d 785, 785-86 (App. Div. 1987) (declining to hold that an accident was unforeseeable "where the store's parking area was specifically designed so that automobiles were required to park close to and facing in toward the

storefront," and where plaintiffs were injured when a driver, in attempting to park a car, pressed the accelerator rather than the brake and crashed through the storefront).

### 2.    Defendant's causation and awareness of the coat rack's placement

In addition, the record abundantly supports an inference that GMRI both caused the coat rack to be placed between Tables 306 and 307 and that defendant had actual awareness of its placement there.  As Naclerio testified, it was the restaurant's management team who determined where coat racks would be placed throughout the restaurant.  Naclerio Depo. at 51-53.  In addition, Naclerio and three other employees of the restaurant all testified that the space between Tables 306 and 307 was the regular location of the coat rack at issue.  Lewis Depo. 52; Sealey Depo. 74-76, 78-79; Naclerio Depo. 105; Depo. of Robert Rivera ("Rivera Depo") 28.

### 3.    Intervening act by the third-party guest who knocked over the coat rack

Finally, GMRI raises the affirmative defense that it was the female customer who knocked over the coat rack, and not defendant, who is liable for plaintiff's injuries.  Under New York law,

> [a]n interruption of the nexus between defendant's negligence and plaintiff's injury by the act of a third party may affect defendant's liability.  An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant.  When, however, the intervening act is a natural and foreseeable consequence of a circumstance created by defendant, liability will subsist.

Kush v. City of Buffalo, 449 N.E.2d 725, 729 (N.Y. 1983) (internal citations omitted).

The cases that defendant cites to support this defense, however, are inapposite.  In Lee v. Durow's Restaurant, Inc., 656 N.Y.S. 2d 321 (App. Div. 1997), the plaintiff was injured after being struck by a "clearly spontaneous and inappropriate," id. at 385, human wheel-barrow during a wedding reception.  Similarly, in Silver v. Sheraton-Smithtown

Inn, 504 N.Y.S.2d 56 (App. Div. 1986), the plaintiff was pushed into a shelf by another

patron after getting into a "sudden and unexpected altercation in a cocktail lounge," id. at

57.[2]

Here, in contrast, a reasonable juror could conclude that it was entirely

foreseeable that another patron would knock the coat rack over in plaintiff's direction

while trying to access the adjacent table—and that such an intervening act would be "a

natural and foreseeable consequence," Kush, 449 N.Y.2d at 729, of defendant's having

placed an unsecured coat rack in the less than three feet of space that separated Tables

306 and 307.  Cf. Arena, 520 N.Y.S.2d at 785-86 (declining to hold that a driver's

"intervening act of negligence was of such an extraordinary nature or so attenuated the

appellants' possible negligence from the ultimate injuries as to be deemed a superseding

cause necessarily relieving the appellant[s] of liability," "where the store's parking area

was specifically designed so that automobiles were required to park close to and facing in

toward the storefront," and plaintiffs were injured when the driver, in attempting to park

her car, accidentally pressed the accelerator and crashed through the storefront).

***

In sum, there is a genuine issue of material fact as to whether placement of the coat rack

between Tables 306 and 307 constituted a dangerous condition that GMRI created and of which

it was actually aware.  Defendant's motion for summary judgment must therefore be denied.

**B.      Preclusion of Silberman's Report and Testimony**

---

[2] Defendant also attempts to rely on Martin v. W.B. Restaurant, Inc., 703 N.Y.S.2d 212 (App. Div. 2000).  In that case, however, the record established that the plaintiff fell after being bumped from behind by another person on the dance floor, and not—as plaintiff's wife belatedly claimed in an affidavit that contradicted her husband's earlier deposition—because he slipped on broken glass that the defendant restaurant had failed to remove from the dance floor.  Id. at 212-13.  The Martin court therefore held that "no action or inaction of the restaurant was a proximate cause of [the plaintiff's] injuries."  Id. at 213.

Plaintiff has retained Scott M. Silberman to offer his "expert" opinion on two issues: (1) "whether the subject coat rack is prone to tipping when met with an outside force," Soto Opp'n Memo 26; and (2) "whether contact is foreseeable when placed in an area of assembly," id. at 31. "For an expert's testimony to be admissible under [Federal Rule of Evidence 702] . . . , it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help." Andrews v. Metro North Commuter R. Co., 882 F.2d 705, 708 (2d Cir. 1989). I conclude that a jury is more than capable of resolving both of the aforementioned issues without any expert assistance.

First, plaintiff insists that "only a professional engineer can explain why the subject coat rack is prone to tipping due to incidental contact." Soto's Opp'n Memo. 26. It is hard to take this argument seriously. Provided with the dimensions and characteristics of a coat rack, such as its height, weight, base size, and whether it was carrying coats, a lay person can capably determine whether the rack was susceptible to tipping upon contact. A juror does not need to understand the technical workings of "forces and loads, rotational forces, and center[s] of gravity," id., to understand that a light, tall object with a small base and heavy load on top is more likely to fall upon contact than a heavy, short object with a large base and a light load on top.

Second, as to the question of "whether contact is foreseeable when placed in an area of assembly," id. at 31, this appears to be a fancy way of saying whether it is foreseeable that someone in a restaurant filled with people would bump into a coat rack. A jury is independently capable of determining not only how busy the restaurant was, but also what effect the level of activity had on the chances that a patron or employee would bump into the coat rack. Similarly,

a juror is competent to determine, without expert assistance, whether it was foreseeable that someone would knock over the coat rack given its placement between Tables 306 and 307.

Because Silberman's report and testimony would not be helpful to a jury, I preclude them under Rule 702. Notably, Silberman's admission that there are no statues on building codes regulating coat storage devices, Depo. of Scott M. Silberman ("Silberman Depo") 89-90, his failure to identify any industry standards governing the placement of coat racks or the use of alternative coat storage methods, and his lack of a background in restaurant environment safety, all suggest that no specialized knowledge is needed to determine whether placement of the coat rack between Tables 306 and 307 created a foreseeable risk of injury. See Grdinich v. Bradlees, 187 F.R.D. 77, 82 (S.D.N.Y. 1999) ("Torphy's own admissions during his deposition reveal that no specialized knowledge is required—as he bases his opinion on non-existent industry standards and his limited professional experience in the field of merchandise display safety."); cf. Andrews, 882 F.2d at 708 (concluding that a jury did not need special training or expertise to decide whether a dimly-lit train platform with trash on it was a "safe place"); Grdinich, 187 F.R.D. 77, 79-82 (S.D.N.Y. 1999) (holding that a "juror needs no special training or expertise to understanding whether ironing boards are safely displayed" in a case where plaintiff was injured when twenty ironing boards allegedly fell on him after he removed a board from a display that "contained four to five adjacent rows of ironing boards stacked five or six boards deep").

**IV.  CONCLUSION**

Based on the foregoing, I hereby deny GMRI's motion for summary judgment but grant defendant's motion to preclude the report and testimony of Silberman.  The case is referred to Magistrate Judge Bloom for settlement discussions.  If the parties are unable to settle, Judge Bloom will assist the parties in preparation for trial.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:      June 24, 2013
           Brooklyn, New York